**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CV-60005-MORENO/STRAUSS**

**MARTA NEGRETE,**

     Plaintiff,

v.

**ANDREW SAUL,**
**Commissioner of Social Security,**

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 32][1] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 33]. This case has been referred to me for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters [*see* DE 5, 9]. I have reviewed both motions, all summary judgment materials, and the record in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion [DE 32] be **DENIED** and that Defendant's Motion [DE 33] be **GRANTED**.

## BACKGROUND

### I.   PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits and supplemental security income on March 17, 2017, alleging disability as of April 1, 2016 ("Alleged Onset Date"). Tr. 15, 220-27. Her applications were denied initially and upon reconsideration. Tr. 109-28. Thereafter, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on January 10,

---

[1] References herein to page numbers of Plaintiff's Motion are to the ECF-stamped page numbers, not the page numbers at the bottom of pages.

2019; a vocational expert ("VE"), Jennie Kramer, also appeared and testified.  Tr. 33-60.  On March 1, 2019, the ALJ issued his decision, finding that Plaintiff was not "disabled" under the Social Security Act (from the Alleged Onset Date through the date of the ALJ's decision).  Tr. 12-27.  On November 5, 2019, the Appeals Council of the Social Security Administration denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner.  Tr. 1-3.  Consequently, on January 2, 2020, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.    PLAINTIFF'S BACKGROUND AND HEARING TESTIMONY

Plaintiff was 50 years old on the Alleged Onset Date and turned 53 years old between the date of the hearing before the ALJ and the date on which the ALJ issued his decision.  *See* Tr. 39, 61.  She completed high school in Bolivia.  Tr. 40.  An interpreter was present at the hearing to assist Plaintiff as Plaintiff only speaks and understands some English.  *See* Tr.  33-37.  In the years before Plaintiff stopped working, she was employed as a salesperson who sold wedding gowns, as a manager for the same employer, and as a babysitter.  Tr. 40-44.  Only the salesperson job required heavy lifting.  *See* Tr. 40-44.

During the last 25 years, Plaintiff has suffered from arthritis.  Tr. 45.  She testified that she is always in pain and that her medicine causes nausea and dizziness.  Tr. 45.  According to Plaintiff, standing hurts her feet and sitting hurts her back.  Tr. 46.  At night, Plaintiff elevates her legs.  Tr. 46-47.  During the day, she tries to walk or move around the house.  Tr. 47.  Sometimes, Plaintiff uses a walker.  Tr. 47.  She also sometimes uses a cane.  Tr. 47.  However, she did not have a cane or walker at the hearing.  Tr. 58.

In 2017, Plaintiff underwent back surgery.  Tr. 47.  She testified that she felt better for about 8 months after surgery but that the other side of her back started to hurt after her doctor

prescribed classes requiring her to walk in the water.  Tr. 47-48.  Plaintiff also stated she is unable to bend down or crouch down.  Tr. 48.  At the time of the hearing, she said she could only lift up to 8 pounds (stating, however, that she has trouble lifting even her brush when in crisis with her arthritis).  Tr. 48.  Plaintiff testified that she receives injections every 4 months and that she is generally fine the first week after her injection.  Tr. 49.  However, she has to ramp up doses of her medication after that to be able to walk or go out.  Tr. 49.

## III.   VE'S HEARING TESTIMONY

The VE first provided testimony regarding Plaintiff's prior work experience.  She explained that Plaintiff performed past relevant work as a babysitter at the light exertional level (though, it is a job generally performed at the medium exertional level), as a store laborer at the medium exertional level (also generally performed at same level), and as a retail store manager at the light exertional level (also generally performed at that level).  Tr. 51-52.

Next, the ALJ posed certain hypothetical questions to the VE.  First, he asked whether someone with Plaintiff's age, background, and vocational history, who can only perform work at the light exertional level, who can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, who can never climb ladders, ropes, or scaffolds, and who should only have occasional exposure to hazards, can perform any of Plaintiff's past relevant work.  Tr. 52-53.  The VE testified that the hypothetical claimant could perform the retail store manager position as actually and generally performed and the babysitter position as actually performed (but not as generally performed).  Tr. 53.

In a second hypothetical question, the ALJ asked the VE whether the same hypothetical person, but one who also uses a cane to ambulate (but not for standing), can perform any of Plaintiff's past relevant work.  Tr. 54, 57.  The VE answered affirmatively, and the VE also

provided other jobs available in substantial numbers in the national economy that such a person would be able to perform.  Tr. 54.  The VE's answer would have been different if the cane was needed for standing.  Tr. 57-58.  In a third hypothetical question, the ALJ asked whether someone who can only sit for 15 minutes at a time and 2 hours in an 8-hour workday, who can only stand for 10 minutes at a time and less than 2 hours in an 8-hour workday, who must move around for 1-2 minutes every 10 minutes, who would need unscheduled work breaks (aside from lunch), who would be off task 15% or more of the workday, who would need to elevate her legs for 1-2 hours per workday, who uses a can to ambulate, who can rarely carry 20 pounds, and who can only occasionally lift/carry 10 pounds, and who has various other limitations, could perform any jobs available in significant numbers in the national economy. Tr. 54-55.  The VE answered no. Tr. 55.

## STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  It "is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]."  *Id.* (quoting *Phillips*, 357 F.3d at

1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## DISCUSSION

### I.      THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history."  *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).  *See also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520.  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If no severe impairment is found, then the ALJ will conclude that there

is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. § 404.1520(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. *Id.* If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 404.1545(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 404.1569. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. § 404.1569. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted). *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

## II.   <u>ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION</u>

After considering the evidence, the ALJ found that Plaintiff was not disabled at any time between the Alleged Onset Date and the date of the ALJ's decision.  Tr. 26-27.  Preliminarily, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020.  Tr. 17.  Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date. Tr. 17.  Next, the ALJ found that Plaintiff had the severe impairments of inflammatory arthritis, spinal disorders, and diabetes mellitus.  Tr. 17.  However, the ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 20.

The ALJ next assessed Plaintiff's RFC, determining, "[a]fter careful consideration of the entire record," that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs, she can occasionally balance, stoop, kneel, crouch, and crawl and she can never climb ladders, ropes or scaffolds. The claimant has no manipulative limitations and she can have frequent exposure to extreme cold, wetness, vibration, and humidity and only occasional exposure to hazards. The claimant has not [sic] limitations for exposures to extreme heat, noise, or environmental irritants such as dust, odors, fumes, and pulmonary irritants. Additionally, the claimant has no limitations interacting with supervisors, co-workers or the public.

Tr. 20-21.  As part of this assessment, the ALJ noted that he considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence.  Tr. 21.  Additionally, the ALJ stated that he considered the opinion evidence.  Tr. 21.

After discussing Plaintiff's background, the ALJ discussed a pain questionnaire completed by Plaintiff in April 2017.  Tr. 21.  In that questionnaire, Plaintiff indicated she experienced pain

every day, which medication only relieved for a few hours.  Tr. 21.  Plaintiff also indicated that all of her joints hurt and that she had walking, sitting, and driving limitations.  Tr. 21.  However, the ALJ noted that a few days after completing the pain questionnaire, Plaintiff had reported that she was taking a 25-day trip outside of the United States.  Tr. 21.

Next, the ALJ discussed Plaintiff's hearing testimony regarding her use of a walker since November 2017, following surgery.  Tr. 21.  However, he noted Plaintiff's preference to not use a walker or cane and that she appeared at the hearing without the use of any assistive device.  Tr. 21-22.  Ultimately, the ALJ concluded, based on his careful consideration of the evidence, that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence in the record . . . ."  Tr. 22.  The ALJ found such statements to be inconsistent, noting that while Plaintiff is treated for inflammatory arthritis, the record revealed, *inter alia*, that Plaintiff had not experienced organ or system involvement.  Tr. 22.  He further explained that while Plaintiff was treated for spinal disorder, her claimed pain and limitations were disproportionate to the clinical findings.  Tr. 22.  The ALJ reiterated that Plaintiff had the capacity to go on an extended trip, and he also noted that the medical records revealed Plaintiff's back pain improved following her 2017 surgery.  Tr. 22.

The ALJ then proceeded to discuss Plaintiff's medical records and treatment notes in depth.  Tr. 22-25.  First, he discussed records of Dr. Hugo Fonseca, one of Plaintiff's treating doctors.  Tr. 22-23.  The ALJ noted that while a 2016 physical examination indicated joint tenderness over Plaintiff's right elbow and swelling over her right knee, Dr. Fonseca found Plaintiff presented normal overall tone and was oriented in all spheres with grossly normal memory.  Tr. 22.  Dr. Fonseca also determined that although Plaintiff presented with rheumatoid arthritis, there was no

organ or systems involvement (a finding also made at subsequent appointments).  Tr. 22.  In conjunction with discussing the records from Dr. Fonseca, the ALJ discussed records from another treating doctor, Dr. Kayra Cepin.  Tr. 22.  Such records included an x-ray showing significant arthritis.  Tr. 22.  Nevertheless, Dr. Fonseca's subsequent assessments indicated that Plaintiff's pattern of joint symptomatology had been stable and non-progressive.  Tr. 23.

After discussing Dr. Fonseca's treatment, the ALJ discussed the treatment provided by Dr. Alex Lam, Plaintiff's treating rheumatologist.  Tr. 23.  Dr. Lam also determined that Plaintiff's pattern of joint symptomatology had been stable and non-progressive, and he similarly reported a lack of organ or systems involvement.  Tr. 23.  The ALJ then proceeded to discuss the records and notes from other medical providers, including Dr. Behnam Myers and Dr. Paola Cintron, other treating physicians of Plaintiff.  Tr. 24.  When discussing their records, the ALJ discussed Plaintiff's back surgery (around October 31, 2017) and improvement thereafter.  Tr. 24.  In addition to discussing improvement in the months following surgery, the ALJ noted that in October 2018, Plaintiff had reported walking three miles about a month earlier and subsequently developing foot pain (but not leg pain).  Tr. 24.

Prior to concluding his discussion regarding Plaintiff's RFC, the ALJ discussed the opinion evidence from Dr. Charles Moore, a state agency medical consultant, and Dr. Paola Cintron, one of Plaintiff's treating physicians.  Tr. 24-25.  The ALJ provided significant weight to the opinion of Dr. Moore (noting consistencies between Dr. Moore's opinion and the evidence), who opined as follows:

> [Plaintiff] can perform [a] light range of work with standing and walking for six hours (Exhibit 5A at 7). . . . [She] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and she can never climb ladders, ropes or scaffolds (*Id.*). . . . [Plaintiff] should avoid concentrated exposure to cold, wetness, and humidity and vibration and should avoid moderate hazards such as machinery or heights (*Id.* at 8).

Tr. 24-25.  However, the ALJ provided little weight to Dr. Cintron's opinion, Tr. 25, which is discussed in further detail below.

After assessing Plaintiff's RFC, the ALJ considered whether Plaintiff had the ability to perform her past relevant work.  Tr. 26.  The ALJ concluded that Plaintiff was able to perform her past relevant work as a babysitter (as actually performed) and as a retail store manager (as actually and generally performed).  Tr. 26.  Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the Alleged Onset Date through the date of the ALJ's decision.  Tr. 26-27.

## III.   **ANALYSIS OF ISSUES**

Plaintiff argues that the ALJ erred for three separate reasons.  First, she argues that the ALJ erred in not finding her disabled under Listing 14.09 at step 3.  Second, she argues that the ALJ erred in his treatment of two medical opinions.  Third, she argues that the ALJ erred in determining Plaintiff's RFC.  In addition to raising the foregoing arguments, Plaintiff also argues that remand may be warranted under sentence six of 42 U.S.C. § 405(g) because she obtained a favorable social security decision following the denial of benefits pursuant to the ALJ's March 1, 2019 decision (the denial at issue in this case).[2]  Plaintiff's arguments fail for the reasons discussed herein.

---

[2] Under sentence six of 42 U.S.C. § 405(g):

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

*Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 544 (11th Cir. 2020) (quoting § 405(g)).

### A. ALLEGED STEP 3 ERROR AS TO LISTING 14.09

"At step three, a claimant is conclusively presumed to be disabled if she meets or equals the level of severity of a listed impairment, or Listing." *Garcia v. Comm'r of Soc. Sec.*, 833 F. App'x 303, 307 (11th Cir. 2020) (citing *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). "To meet a Listing, the claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify, no matter how severely it meets some of the criteria." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "The claimant bears the burden of demonstrating that she meets a Listing." *Id.* (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)).

Here, Plaintiff argues that she satisfied Listing 14.09 and that the ALJ erred in concluding otherwise. Specifically, she contends that she has satisfied subsections (A)(1), (A)(2), (B), (C)(2), and (D), recognizing that satisfaction of any of these subsections is sufficient to satisfy Listing 14.09. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.09 (reflecting that the foregoing subsections are separated by "or"). To satisfy subsection (A), Plaintiff must show "persistent inflammation or deformity in [(1)] one major peripheral weight-bearing joint resulting in the inability to ambulate effectively . . . or [(2)] one major peripheral joint in each upper extremity resulting in the inability to perform fine and gross movements effectively." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 712-13 (11th Cir. 2017). *See also* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.00(D)(6)(e)(i); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.09(A). Under subsections (B), (C)(2), and (D), a plaintiff's inflammatory "arthritis must involve various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs." *Banks*, 686 F. App'x at 713. *See also* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.00(D)(6)(e)(ii).

Regarding Listing 14.09, the ALJ found that Plaintiff's

> inflammatory arthritis does not meet the requirements of Listing 14.09, *Inflammatory arthritis,* because the claimant does not have persistent deformity or inflammation in one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively; or inflammation or deformity in one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively. The claimant does not have anklyosing spondylitis or other spondyloarthropathies. Finally, the claimant has not had repeated manifestations of inflammatory arthritis with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) in conjunction with marked limitations in activities of daily living, social functioning, in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Tr. 20.  Plaintiff dubs the foregoing as "nothing more than a conclusory declaration . . . followed by only a brief and cursory recitation of the otherwise complex and intricate listing's criteria." [DE 32] at 5.  However, Plaintiff completely ignores the fact that the ALJ discusses evidence relevant to the foregoing findings throughout his decision.  As discussed in further detail herein, the ALJ's determination regarding Listing 14.09 is supported by substantial evidence.  Thus, Plaintiff's arguments to the contrary are misplaced.  *See Connors v. Colvin*, 656 F. App'x 808, 810 (9th Cir. 2016) ("The ALJ's step-three finding that Connors did not meet or equal Listing 14.09 for rheumatoid arthritis is procedurally and substantively sound. The ALJ did not include a discussion of the relevant rheumatoid arthritis evidence in the section of his opinion dedicated to the listing analysis, but he did include a discussion of the relevant evidence later in his opinion. Therefore, his analysis was procedurally proper.").

## 1.  14.09(A)(1)

As indicated above, subsection (A)(1) requires "persistent inflammation or deformity in one major peripheral weight-bearing joint resulting in the inability to ambulate effectively." *Banks*, 686 F. App'x at 712.  "An inability to ambulate effectively means an 'extreme limitation of the ability to walk,' such as when a person needs to use a walker or cannot perform routine

activities such as shopping or banking." *Id.* at 713 (citing 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(B)(2)(b)(1)-(2)). *See also* § 1.00(B)(2)(b)(2) ("[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail."); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.00(C)(6).

Plaintiff has failed to show that the ALJ's subsection (A)(1) determination is not supported by substantial evidence. Even if Plaintiff has some difficulties with walking, the evidence supports the ALJ's determination of no "inability to ambulate effectively" because the evidence does not reveal any "extreme" limitation as contemplated under § 1.00(B)(2)(b). Plaintiff herself acknowledged that while she may use a walker or cane (not two canes) when she goes out, she prefers not to use a walker or cane. Significantly, the ALJ took this testimony into account, as well as the fact that Plaintiff appeared at the hearing without a cane, walker, or other assistive device. Tr. 21-22, 25. The fact that Plaintiff does not always require a walker, cane, or other assistive device qualifies as substantial evidence to support the ALJ's finding. *Cf. Connors*, 656 F. App'x at 810 ("Because Connors's walker was prescribed for 'periodic use' and because Connors claims to need the walker only 'at times,' she cannot show an 'extreme limitation of the ability to walk.'").

Moreover, the ALJ also considered Plaintiff's report of being able to walk *3 miles* (albeit with a complaint of later developing pain in her feet) and swim (though, Plaintiff characterizes the swimming as a physical therapy activity involving walking in the water). Tr. 24, 25. *See also* Tr. 717, 726. Further, as Defendant notes, in April 2018, Dr. Myers observed that Plaintiff

14

"ambulate[d] to the examination room without assistance."  Tr. 719.  While Plaintiff notes other evidence that at least suggests some ambulation issues, that does not alter the fact that there is substantial evidence in the record to support the ALJ's conclusion.  Because this Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]," the ALJ's subsection (A)(1) determination must stand.  *Dyer*, 395 F.3d at 1210.

### 2.  14.09(A)(2)

As indicated above, subsection (A)(2) requires "persistent inflammation or deformity in . . . one major peripheral joint in each upper extremity resulting in the inability to perform fine and gross movements effectively."  *Banks*, 686 F. App'x at 712-13.  "Inability to perform fine and gross motor movements refers to an extreme loss of functioning in both hands."  *Id.* at 713 (citing 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(B)(2)(c)).  *See also* § 1.00(B)(2)(c) ("Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level."); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.00(C)(7).

Plaintiff has failed to show that the ALJ erred in finding that the evidence did not reveal an inability to perform fine and gross movements effectively as a result of inflammation or deformity in one or more major peripheral joints in each upper extremity.  Substantial evidence supports the

ALJ's determination. While Plaintiff's Motion discusses evidence regarding some tenderness and weakness in her upper extremities and other evidence that certainly shows she was experiencing some pain in her hands, *see* [DE 32] at 15-17, that does not equate to an "extreme loss of functioning in both hands." At the very least, substantial evidence exists to support of the ALJ's determination that Plaintiff had no such extreme loss of functioning in both hands. As Defendant notes, [DE 33] at 12, there is evidence in the record showing 5/5 grip and upper extremity strength and normal sensation. Tr. 698-99, 724, 728. *Cf. Banks*, 686 F. App'x at 713-14 ("Dr. Goodman indicated that Hunter had 5/5 grip strength . . . . Although Dr. Goodman stated that Hunter may have trouble performing sustained fine or gross manipulations due to involvement of the right wrist, he did not state that Hunter faced an extreme loss of functioning in both hands."). Also, Dr. Charles Moore, the state agency medical consultant, indicated that Plaintiff had no manipulative limitations. Tr. 90. Furthermore, while the ALJ generally assigned little weight to the opinions of Plaintiff's treating doctor, Dr. Paola Cintron, because, *inter alia*, Dr. Cintron's opinion was largely inconsistent with Dr. Moore's opinion, it is noteworthy that Dr. Cintron stated that Plaintiff had no significant limitations with reaching, handling, or fingering (a limited aspect of Dr. Cintron's opinion that appears to be consistent with Dr. Moore's opinion). Tr. 817. Ultimately, the ALJ's subsection (A)(2) determination is supported by substantial evidence.

### 3. 14.09(B)

To satisfy subsection (B), Plaintiff must show inflammation or deformity in one or more peripheral joints with (1) "[i]nvolvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and" (2) "[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.09(B).

In her motion, though Plaintiff briefly recognizes the differences between subsections (B), (C)(2), and (D), she largely analyzes them together.  However, her analysis appears to primarily, if not completely, focus on the requirement regarding the involvement of two or more organs/body systems.  *See* [DE 32] at 17-24.  While that is one of the requirements under subsections (B) and (C)(2), it is not a requirement under subsection (D).  Moreover, it is not the only requirement under subsections (B) and (C)(2).[3]

In any event, while Plaintiff has provided some evidence regarding involvement of other organs/systems, she has failed to show that the ALJ's determination to the contrary is not supported by substantial evidence.  In fact, the ALJ's decision references several records from several different dates that evidence a lack of involvement of other organs/systems.  *See* Tr. 22 ("[T]he record reveals that the claimant has not experienced organ or system involvement . . . ." (citing Exhibits 1F at 6, 12; 5A at 8)); Tr. 22 ("Dr. Fonseca assessed that the claimant presented rheumatoid arthritis with rheumatoid factor of multiple sites without organ or systems involvement." (citing Exhibit 1F at 5)); Tr. 22-23 ("On October 25, 2016, Dr. Fonseca assessed that the claimant presented rheumatoid arthritis with rheumatoid factor of multiple sites without organ or systems involvement." (citing Exhibit 1F at 37)); Tr. 23 ("On June 13, 2017, Dr. Fonseca assessed that the claimant presented rheumatoid arthritis with rheumatoid factor of multiple sites without organ or systems involvement." (citing Exhibit 6F at 6)); Tr. 23 ("On April 26, 2018, Dr. Lam assessed that the claimant presented rheumatoid arthritis with rheumatoid factor of multiple sites without organ or systems involvement." (citing Exhibit 7F at 37)); Tr. 23 ("On September 11, 2018 . . . Dr. Lam further assessed that the claimant's rheumatoid arthritis was without organ or systems involvement." (citing Exhibit 7F at 55)); Tr. 25 ("Dr. Moore's opinion is generally

---

[3] The requirements under subsection (C)(2) are set forth in the next section.

consistent with the substantial evidence of record including Dr. Fonseca's assessment that the claimant's rheumatoid arthritis had no organ or systems involvement . . . ." (citing Exhibit 1F at 37, 56)). Defendant's Motion also provides additional instances where Dr. Fonseca noted the lack of involvement of organs/systems. [DE 33] at 12. Accordingly, the ALJ's determination concerning involvement of other organs or systems is supported by substantial evidence. While Plaintiff may believe that the evidence she has provided preponderates against the ALJ's contrary finding, even if true, that is plainly insufficient for this Court to reverse the ALJ's determination, given that it is supported by substantial evidence in the record. *See Dyer*, 395 F.3d at 1210.

Plaintiff's subsection (B) argument also fails on a separate independent ground. As noted above, the ALJ found that Plaintiff "has not had repeated manifestations of inflammatory arthritis with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)."[4] Tr. 20. In her focus on involvement of organs/systems, Plaintiff appears to largely overlook this separate requirement. Aside from referencing the applicable standards, Plaintiff's motion refers to nausea in one location, [DE 32] at 21, refers to Plaintiff's complaints of fatigue in another location (in the context of discussing subsection (A)(1)), [DE 32] at 11, does not use the term "malaise" (aside from referencing standards), and discusses Plaintiff's tendency to gain weight, [DE 32] at 21, not involuntarily lose weight. On the contrary, Defendant's Motion notes numerous instances in the record where Plaintiff denied having constitutional symptoms. [DE 33] at 12. At a minimum, Plaintiff has failed to demonstrate that the ALJ's findings regarding constitutional symptoms or signs is not supported by substantial evidence. Therefore, Plaintiff's subsection (B) argument fails for this reason as well.

---

[4] As indicated in the sections that follow, this requirement of constitutional symptoms or signs is also a requirement under subsection (D) – but not under subsection (C)(2).

#### 4.   14.09(C)(2)

To satisfy subsection (C)(2), Plaintiff must show:

> Ankylosing spondylitis or other spondyloarthropathies, with . . . Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.09(C).  *See also Banks*, 686 F. App'x at 713 ("Meeting subsections C1 and C2 involves showing a diagnosis of ankylosing spondylitis or other spondyloarthropathies." (citing 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.09.C) (footnotes omitted)).

As an initial matter, Plaintiff's subsection (C)(2) argument fails for the reasons stated in the preceding section in relation to the requirement regarding involvement of two or more organs or systems.  Moreover, as Defendant indicates, *see* [DE 33] at 11 n.4, Plaintiff's (C)(2) argument is perfunctory at best – something Plaintiff does not appear to dispute in responding to Defendant's Motion and in replying to her own motion, *see* [DE 35] at 3-5.  Regardless, not only has Plaintiff failed to establish error regarding the organ/system requirement, she has failed to discuss how the remaining requirements of subsection (C)(2) are supposedly satisfied, if at all.  Therefore, Plaintiff has not demonstrated error, let alone reversible error, with respect to subsection (C)(2).

#### 5.   14.09(D)

To satisfy subsection (D), Plaintiff must show "[r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:" (1) "[l]imitation of activities of daily living"; (2) "[l]imitation in maintaining social functioning"; or (3) "[l]imitation

in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace."
20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.09(D).

As an initial matter, Plaintiff's subsection (D) argument fails because, as stated above –
when analyzing subsection (B) – Plaintiff has failed to demonstrate that the ALJ's finding
regarding constitutional symptoms or signs is not supported by substantial evidence. Again, the
constitutional symptoms or signs requirement, for which Plaintiff has failed to establish any error
on the part of the ALJ (as discussed above), is a requirement under both subsections (B) and (D).

Moreover, Plaintiff's subsection (D) argument also separately fails because Plaintiff has
failed to show that the ALJ erred in not finding any of the three aforementioned limitations at the
marked level. Once again, Plaintiff's Motion appears to gloss over this requirement. Thus, not
only does she fail to point to evidence to establish any such limitation at the marked level, but she
completely ignores the fact that the ALJ considered this issue. Specifically, the ALJ found that:

> In understanding, remembering, or applying information, the claimant has no
> limitation. On April 26, 2017, while the claimant reported that her driving was
> limited to twenty minutes, she attributed it to her back pain (Exhibit 5E at 3).
> Additionally, although the claimant reported limitations cleaning and that her
> son did the laundry, she attributed it to her pain *(Id.).* The claimant further reported that
> she can prepare herself easy meals such as cereal or sandwiches *(Id.).*
>
> In interacting with others, the claimant has no limitation. On April 26, 2017, the
> claimant reported that when she attends social events, she develops pain (Exhibit
> 5E at 3). Additionally, the claimant reported that she was leaving the United States
> and returning in 25 days trip to celebrate mother's day with her daughter (Exhibit
> 6E at 1).
>
> With regard to concentrating, persisting, or maintaining pace, the claimant has no
> limitation. As noted above, on April 26, 2017, while the claimant reported that her
> driving was limited to twenty minutes, she attributed it to her back pain (Exhibit 5E
> at 3). Additionally, as noted above, although the claimant reported limitations
> cleaning and that her son did the laundry, she attributed it to her pain *(Id.).* The
> claimant further reported that she can prepare herself easy meals such as cereal or
> sandwiches *(Id.).*

As for adapting or managing oneself, the claimant has experienced a mild limitation. On April 26, 2017, although the claimant reported some limitations caring for her personal hygiene and grooming, the claimant attributed those limitations to her physical symptoms (Exhibit 5E at 2). Additionally, as noted above, although the claimant reported limitations cleaning and that her son did the laundry, she attributed it to her pain *(Id.).* The claimant further reported that she can prepare herself easy meals such as cereal or sandwiches *(Id.)*. Additionally, the claimant reported that she was leaving the United States and returning in 25 days trip to celebrate mother's day with her daughter (Exhibit 6E at 1).

Tr. 19.  Accordingly, Plaintiff has failed to establish any error regarding the ALJ's Listing 14.09 determinations.

### B.  MEDICAL OPINIONS

"The ALJ considers many factors when weighing medical evidence, including whether an opinion is well-supported and consistent with the record." *Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1305 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).[5] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  "A treating physician's medical opinion must be given 'substantial or considerable weight' unless 'good cause' is shown to give it less weight." *Hargress*, 883 F.3d at 1305 (citing *Winschel*, 631 F.3d at 1179; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). "With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate [the] reasons for doing so." *Id.* (quoting *Winschel*, 631 F.3d at 1179).  "Good cause

---

[5] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017.  As noted above, Plaintiff filed her claim on March 17, 2017.

exists when 'the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence

supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent

with the doctor's own medical records.'" *Id.* (quoting *Winschel*, 631 F.3d at 1179).

### 1. Dr. Behnam Myers

Plaintiff argues that the ALJ erred by failing to articulate the weight given to the opinion

of Plaintiff's treating orthopedic surgeon, Dr. Myers.  [DE 32] at 27-28.  Specifically, Plaintiff

contends that the following statements made by Dr. Myers reflect medical opinions that the ALJ

was required to weigh in accordance with 20 C.F.R. § 404.1527:

> She is currently applying for disability. Given her chronic rheumatoid arthritis and
> arthritic condition to her feet. I think the she is going to be difficult to obtain gainful
> employment. In addition she does have some arthritic changes in her lower lumbar
> spine below. As well as some mild sacroiliac disease. This will make long term
> sitting difficult for her as well.

Tr. 725.  After relaying Dr. Myers' statements, Plaintiff seems to focus in on the portion where

Dr. Myers states he thinks it will be difficult for Plaintiff to obtain gainful employment.  *See* [DE

32] at 27-28.  In responding to Plaintiff's argument regarding Dr. Myers, Defendant argues that

the ALJ did not err because Dr. Myers did not offer a medical opinion.  Alternatively, Defendant

contends that to the extent Dr. Myers' statements constitute medical opinions, any error was

harmless.

Defendant is correct on both fronts.  With respect to the statement regarding gainful

employment, it is a conclusory statement that does not reflect any specific judgment about the

nature and severity of Plaintiff's impairments.  Thus, it is not a medical opinion.  Moreover, while

Dr. Myers merely stated that he believed Plaintiff would encounter difficulty in obtaining gainful

employment, even if the Court were to (mis)construe the statement as one stating that Plaintiff is

not capable of working, then Dr. Myers would have merely been expressing an opinion on an issue

reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d); *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1339 (11th Cir. 2021) ("A medical source's opinion that a claimant is 'disabled' *or 'unable to work'* is not dispositive of a disability claim because the determination is reserved to administrative law judge acting on behalf of the Commissioner." (emphasis added) (citing § 404.1527(d)(1))); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 872 (11th Cir. 2020) ("[A]s for Dr. Hernandez's statements indicating that Figuera's condition was 'chronic' and 'debilitating,' while the ALJ may have erred by failing to state with particularity the weight given to Dr. Hernandez's opinion, any error was harmless. . . . Dr. Hernandez's conclusion that Figuera's mental condition was 'debilitating' goes to the determination of disability, an administrative issue reserved for the Commissioner." (internal citations omitted)).

As to Dr. Myers' statement regarding long-term sitting, it is also conclusory.  Dr. Myers provides no indication regarding any specific sitting limitations.  He merely states that Plaintiff will have difficulty with long-term sitting without providing any indication regarding what he considers to be long-term.  Moreover, it is unclear how any long-term sitting limitation would have any impact on the ALJ's RFC determination.  As Plaintiff herself notes, the ALJ found that Plaintiff can perform light exertional work, which involves standing or walking for up to 6 hours, off and on, in an 8-hour workday.  *See* [DE 32] at 28; SSR 83-10, 1983 WL 31251, at *6.  *See also Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (holding that any error committed by the ALJ in not identifying the weight assigned to two medical opinions was harmless "because it did not affect the [ALJ's] ultimate determination").  Furthermore, it is significant that the ALJ discussed Dr. Myers' treatment notes and records (referring to numerous pages within the

exhibit containing the subject statements) in formulating Plaintiff's RFC.[6]  Tr. 24.  *See Hunter*, 609 F. App'x at 557-58; *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017) (finding ALJ's failure to state weight assigned to potential medical opinions to be harmless where the ALJ's decision reflected that she considered the treatment notes of the medical providers and the ALJ's decision was consistent with the records); *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) ("[W]e find no reversible error. Although the ALJ never stated the weight given to Dr. Frailing's treatment notes, the ALJ discussed the content of Dr. Frailing's notes, showing that the ALJ considered and gave weight to this medical evidence."); *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) ("[E]ven if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of Dr. Giron's opinion, this error was harmless because it is still clear that the ALJ's rejection of the portions of Dr. Giron's opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantial evidence.").

In sum, the ALJ did not err because Dr. Myers' statements do not appear to qualify as medical opinions and, to the extent they do, any error was harmless.

### 2. Dr. Paola Cintron Villa

Unlike Dr. Myers, Dr. Cintron Villa clearly provided a medical opinion.  Tr. 815-19.  The ALJ's decision includes the following evaluation of Dr. Cintron Villa's opinion:

> In addition, on December 20, 2018, Dr. Paola Cintron, the claimant's treating doctor, prepared a report on behalf of the claimant (Exhibit 11F at 1). Dr. Cintron opined that the claimant can walk half a block without rest or severe pain, and she can sit, stand and walk for less than two hours in an eight-hour workday *(Id.* at 2). Additionally, Dr. Cintron opined that the claimant would need periods of walking around for one to two minutes and she would need unscheduled breaks every fifteen minutes for five minutes *(Id.)*. Dr. Cintron further opined that the claimant can lift less than ten pounds frequently and ten pounds occasionally and she could frequently twist, occasionally stoop, she could rarely climb stairs, and crouch, and

---

[6] Plaintiff's implication in her Reply, *see* [DE 35] at 6, that the ALJ's decision does not even suggest consideration of Dr. Myers' notes is, therefore, clearly misplaced.

can never climb ladders *(Id.* at 3). Additionally, Dr. Cintron opined that the claimant would need to be 20% off tasks and would be absent from work more than four days per month *(Id.* at 4). The undersigned accords little weight to Dr. Cintron's opinion, as it is not generally consistent nor supported by the substantial evidence of record. As noted above, the record reveals that the claimant's back pain improved post surgery (Exhibit 9F at 12, 16, 19). Additionally, Dr. Cintron's opinion is not consistent with the claimant's reports of swimming and walking three miles (Exhibit 9F at 23, 32). Further, Dr. Cintron's opinion is not generally consistent with the claimant's course of treatment for her rheumatoid arthritis which reveals that her symptoms are stable with treatment (Exhibit 1F at 37, 56). Additionally, Dr. Cintron's opinion is not consistent with Dr. Moore's opinion (Exhibit 5A at 7, 8).

Tr. 25. Plaintiff contends that the ALJ erred in his evaluation. However, substantial evidence supports the ALJ's clearly articulated reasons for disregarding Dr. Cintron's opinions.

The ALJ did exactly what an ALJ is supposed to do when evaluating and discounting a treating physician's medical opinion (and the ALJ's findings are supported by substantial evidence). He considered relevant factors including whether the opinion was well-supported and consistent with the record. He stated with particularity the weight given to the opinion and the reasons therefor. And he clearly articulated the reasons for assigning little weight to the opinion, explaining (with supporting reasons) that the opinion was "not generally consistent nor supported by the substantial evidence of record." Tr. 25. In other words, the ALJ determined that the opinion was not bolstered by the evidence and that the evidence supported a contrary finding (i.e. good cause).

Plaintiff nevertheless quibbles with the reasons articulated by the ALJ. For instance, she takes issue with the ALJ's finding that the record reveals that Plaintiff's back pain improved after surgery. *See* [DE 32] at 30. However, in his decision, the ALJ references several locations in the record supporting this finding. *See* Tr. 22-25. In other words, the record provides substantial evidence for the finding, and merely because Plaintiff complained the other side of her back started hurting eight months after surgery is insufficient to undermine the ALJ's finding. Plaintiff also

disputes the ALJ's characterization of the evidence indicating that Plaintiff walked 3 miles and went swimming, [DE 32] at 31, but the ALJ made a finding based on unrefuted evidence in the record (at least with respect to the report of walking 3 miles).[7]

From there, Plaintiff continues to nitpick at other portions of the rationale provided by the ALJ, *see* [DE 32] at 32-34, including by taking aim at the opinion of Dr. Moore (the state agency medical consultant).  With respect to Dr. Moore, Plaintiff contends that it is his opinion that is inconsistent with the record, not Dr. Cintron Villa's opinion.  [DE 32] at 33-34.  She attempts to impugn Dr. Moore's competence, referring to him as "a self-described surgeon."  But "the regulations provide that non-examining sources may offer opinion evidence and that State agency medical consultants are highly qualified and considered experts in Social Security disability evaluations."  *Banks*, 686 F. App'x at 711 (citing 20 C.F.R. § 416.927(e)).  Additionally, Plaintiff implies that Dr. Moore's opinion should be invalid because it was provided in July 2017 and, thus, is not based on information originating after that time.  While this argument might have some merit (at least for the period of time following July 2017) had the ALJ discounted Dr. Cintron Villa's opinion on the *sole* basis that it conflicted with Dr. Moore's opinion, that is plainly not the only reason the ALJ provided for discounting the opinion.  Ultimately, the ALJ complied with all legal requirements and appropriately discounted Dr. Cintron Villa's opinion based on substantial evidence.  No error has been shown.

---

[7] The report of swimming was not necessarily refuted, but Plaintiff did testify that her swimming was more like walking in the water.  Regardless, I cannot say that the ALJ's statement regarding swimming is not supported by substantial evidence.  The ALJ's characterization of the activity as "swimming" does not necessarily imply a qualitatively different degree of exertion than the Plaintiff's clarified description; the ALJ did not assert something to the effect that Plaintiff frequently swims laps in the pool.  Moreover, it is of little consequence in the grand scheme of things, especially considering the ALJ provided several reasons to support his decision to discount Dr. Cintron Villa's opinion.

### C.  RFC

In a single paragraph (that essentially reiterates the other arguments made throughout her motion that have been addressed above), Plaintiff briefly raises a few alleged errors concerning the ALJ's RFC determination.  She argues that the ALJ "failed to properly assess the evidence of record, often selectively citing to some evidence while ignoring other important evidence altogether, improperly neglected to acknowledge the opinions of treating source orthopedic surgeon, Dr. Myers, and improperly discounted the opinions of Dr. Cintron Villa."  [DE 32] at 35.  However, as discussed above, the ALJ did not err in discounting Dr. Cintron Villa's opinion, and he did not err in not assigning weight to Dr. Myers' purported medical opinion (to the extent Dr. Myers' statements constitute a medical opinion, any error was harmless).  Moreover, there is no basis to find that the ALJ ignored important evidence.  His detailed opinion shows that he carefully considered Plaintiff's medical condition as a whole.  Notably, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [this Court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole.'"  *Dyer*, 395 F.3d at 1211 (citation omitted).

Beyond Plaintiff's objections as to the ALJ's assessments of Drs. Myers and Cintron Villa, Plaintiff takes issue with the absence of "manipulative or reaching limitations" in the ALJ's RFC determination and the finding that Plaintiff can perform work at the light exertional level (which, as noted above, may involve standing and/or walking, off and on, for up to 6 hours during the workday).  However, for the reasons discussed above (in the section regarding Listing 14.09(A)(2)), the absence of manipulative or reaching limitations in Plaintiff's RFC is supported by substantial evidence.  Additionally, while Plaintiff indicated she experienced pain from walking, substantial evidence supports the ALJ's determination that Plaintiff is capable of

performing work at the light exertional level without any limitations beyond those already included in Plaintiff's RFC.  Such evidence includes, *inter alia*, Dr. Moore's opinion that Plaintiff can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, Tr. 89.  Further, as noted above, Plaintiff was able to walk 3 miles in October 2018, she was able to at least stand and walk in the water, and she was able to travel outside of the United States for several weeks. Accordingly, Plaintiff has failed to show that the ALJ's RFC determination is not supported by substantial evidence.

### D.  SENTENCE-SIX REMAND

Following the denial of benefits in accordance with the ALJ's March 1, 2019 decision (and the Appeals Council's denial of Plaintiff's request for review), Plaintiff filed a second disability claim (in addition to filing this case).  In her motion, she states that in May 2020, the Social Security Administration found her to be disabled as of March 2, 2019 (the day after the ALJ's decision in this case).  Plaintiff asserts that she has requested, but is still waiting to receive, the underlying evidence from her subsequent favorable decision.  She contends that the underlying evidence "may create a reasonable probability that would change the outcome of the case at hand, [but that it] remains outstanding and not discoverable to [her]."  [DE 32] at 36.  Therefore, Plaintiff requests that she be permitted "to flesh out this particular legal argument either in a reply brief or a sur-reply brief within 30 days of receipt of the requested underlying evidence from the Social Security Administration's District Office."  [DE 32] at 38.

Plaintiff, however, provides no basis to hold up the resolution of this case, and she clearly fails to provide any basis for a sentence-six remand.  "Under sentence six of section 405(g), a district court may remand a case to the Commissioner for consideration of newly discovered evidence."  *Reeves v. Comm'r, Soc. Sec. Admin.*, 817 F. App'x 898, 901 (11th Cir. 2020).  To

obtain remand under sentence six, Plaintiff must show that "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Id.* (quoting *Hunter v. Comm'r of Soc. Sec. Admin.*, 808 F.3d 818, 821 (11th Cir. 2015)).  However, "a later favorable decision is not evidence for § 405(g) purposes," *Hunter*, 808 F.3d at 822, and Plaintiff has not provided any actual "new evidence" at this time.  Therefore, her sentence-six remand argument fails.  Further, Plaintiff presents no basis upon which to indefinitely delay the resolution of this case.  Instead, she merely speculates that she may (or may not) uncover some new evidence that may (or may not) be material.  That is plainly insufficient.

<u>**CONCLUSION**</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion [DE 32] and **GRANT** Defendant's Motion [DE 33].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 14th day of April 2021.

**Jared M. Strauss**
**United States Magistrate Judge**

29